UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION,<br><br>*Defendant*. | Civil Action No. 24 - 3062 (LLA) |

**MEMORANDUM OPINION**

Plaintiff Informed Consent Action Network ("ICAN") brings this action against the National Aeronautics and Space Administration ("NASA"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, arising out of its request for certain records, ECF No. 1. This matter is before the court on NASA's motion for summary judgment, ECF No. 10, and ICAN's cross-motion for summary judgment, ECF No. 13. For the reasons explained below, the court will grant NASA's motion for summary judgment and deny ICAN's cross-motion for summary judgment.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

ICAN is a nonprofit news media organization with a mission of "put[ting] health information in the hands of the public to enable informed consent concerning medical decisions." ECF No. 12, at 1-2; *see* ECF No. 15-1 ¶ 33. NASA is a federal agency that "conduct[s] cutting-edge research to advance technology and aeronautics." Nat'l Aeronautics & Space

Admin., *About NASA*.[1]  NASA owns the Jet Propulsion Laboratory ("JPL"), a federally funded research and development center ("FFRDC") based at the California Institute of Technology ("Caltech").  ECF No. 15-1 ¶¶ 1-2.  Originally founded in 1936 by Caltech researchers, the JPL today exists to support the "long-term research and development needs of NASA missions when those needs cannot be met as effectively by existing in-house federal or contractor resources."  *Id.* ¶ 3;[2] *see* 48 C.F.R. § 35.017(a)(2) (2024); ECF No. 10-2, at 2 ¶ 4.[3]

In October 2023, ICAN submitted a FOIA request to NASA, seeking:

> All communications sent or received by Riley Duren and Erik Conway from January 1, 2018 through the date of the search that contain the term(s) "geoengineer*," "climate intervention," "solar radiation management," "SRM," "stratospheric aerosol injection," "SAI," "SABRE," and/or "SCOPEX."
>
> * = Boolean search

ECF No. 15-1 ¶ 10; *see* ECF No. 1-1, at 1-2.  The next month, NASA sent ICAN a letter acknowledging the request, ECF No. 15-1 ¶ 11, and stating that its "Prime Contractor, California Institute of Technology (Caltech), need[ed] additional time to process [ICAN's] request," ECF No. 1-2, at 1.[4]  In February 2024, NASA updated ICAN on the status of the search, explaining that

---

[1] *Available at* https://perma.cc/8EQM-82KF.

[2] While ICAN states that it cannot substantiate this claim without discovery, ECF No. 12-1 ¶ 3, it is undisputed that the JPL is a FFRDC, *see id.* ¶ 1, and the rest of this assertion flows from the statutory definition of a FFRDC, *see* 48 C.F.R. § 35.017(a)(2).

[3] When citing ECF Nos. 10-2 and 10-3, the court uses the page numbers generated by CM/ECF, rather than each document's internal pagination.

[4] When NASA receives a FOIA request for records related to the JPL's operations, its Office of Jet Propulsion Laboratory Management and Oversight makes a formal request to the JPL FOIA Liaison—a Caltech employee—to conduct a search for responsive records.  ECF No. 10-2, at 2 ¶ 5.

2

it had asked the FOIA Liaison at Caltech to conduct a search for the requested records, and the Liaison had responded:

> [T]here are no responsive government records. There are contractor records that do not include NASA in the distribution of those contractor records, but these were not provided pursuant to H-16 (b)(1)(i) of NASA Prime Contract 80NMO0018D0004. Our search process included searching the official office of record using all of the request's specified search terms and full time period.

ECF No. 1-3, at 2; *see* ECF No. 15-1 ¶¶ 17, 45. NASA's letter further clarified that "[n]ot all data at the Jet Propulsion Laboratory are government records"; that "[c]ontractor records are not subject to the FOIA in that they are not Government records, not in our control, and beyond the reach of a NASA FOIA request"; and that the "personnel named in [ICAN's] request are not NASA Government employees." ECF No. 1-3, at 2-3.

In May 2024, ICAN timely appealed, ECF No. 1-4, and the next month, NASA confirmed receipt of the appeal request, ECF No. 1-5; *see* ECF No. 15-1 ¶¶ 18, 47. ICAN filed this action in October 2024, ECF No. 1, without having received a final determination as to its appeal, *see* ECF No. 15-1 ¶¶ 18, 48-49. In December 2024, the parties met and conferred, and ICAN clarified that: (1) it sought only emails and chats responsive to its request; and (2) it was not requesting a search of the systems of NASA employees for responsive emails or chats with the named Caltech employees. ECF No. 15-1 ¶¶ 19-22. In 2025, the parties filed cross-motions for summary judgment, ECF Nos. 10, 13, which have been fully briefed, ECF Nos. 10, 12, 13, 15 to 17.

## II. LEGAL STANDARDS

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). FOIA "vests

3

jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment may be awarded to the agency if it can demonstrate that no material facts are in dispute, that it conducted an adequate search for responsive records, and that each record has either been produced or is exempt from disclosure. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014); *see* Fed. R. Civ. P. 56(a). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'" *U.S. Dep't. of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (citation omitted).

In considering a motion for summary judgment, the court may rely on declarations, affidavits, and other documents that "describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). This evidence is "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intel. Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III.     DISCUSSION

The parties dispute whether the requested records—communications sent and received by two JPL employees—are agency records within the meaning of FOIA.  The Supreme Court has set forth "[t]wo requirements . . . , each of which must be satisfied for requested materials to qualify as 'agency records.'"  *Tax Analysts*, 492 U.S. at 144.  First, an agency must have either "create[d] or obtain[ed]" the materials in question.  *Id.* (quoting *Forsham v. Harris*, 445 U.S. 169, 182 (1980)).  Second, the agency must have "control[led] the requested materials at the time the FOIA request [was] made."  *Id.* at 145.  The court first considers whether NASA created or obtained the communications at issue before determining whether NASA controlled them.

### A.     NASA Did Not Create or Obtain the Requested Records

NASA argues that it did not create or obtain the records ICAN seeks because the JPL employees who sent the communications in question are employed by Caltech, not NASA, and there is no evidence that NASA "controlled the[ir] day-to-day activities . . . such that they could be considered agents of NASA under FOIA." ECF No. 10, at 5.  As support, NASA provides the declaration of Stephanie Fox, Deputy Agency FOIA Officer and FOIA Public Liaison at NASA, who avers that the documents requested by ICAN "have not been provided to NASA" and that "NASA has not and would not in its normal course of operations ordinarily obtain from Caltech the records Plaintiff seeks." ECF No. 10-2, at 4 ¶¶ 12, 15.  NASA also points to its contract with Caltech that governs the operation of the JPL, arguing that it "indicates, quite strongly, that Caltech is independent of NASA." ECF No. 10, at 6.

In response, ICAN relies heavily on several provisions of the same contract to support its assertion that NASA created and obtained the records sought.  ICAN first cites a provision that states:

5

> The Contractor's primary mission is to support NASA in carrying out its mission. In doing so, the Contractor shall, in conjunction with the NASA Management Office and the appropriate NASA HQ sponsor, develop task plans to undertake science, research and technology, as well as end-to-end mission development . . . .

ECF No. 10-3, at 22; *see* ECF No. 12, at 5; ECF No. 17, at 4-5.  ICAN contends that this language—coupled with NASA's ownership of the JPL and the longstanding nature of the relationship between NASA and the JPL—confirms that NASA is involved in the laboratory's day-to-day operations such that any records in Caltech's possession ought to be deemed NASA records. ECF No. 12, at 5; ECF No. 17, at 4-5.  NASA counters that it and Caltech are two distinct entities and that the "longevity of their relationship . . . just reflects . . . a desire to continue performing their separate and distinct responsibilities under a contract."  ECF No. 15, at 2.  In further support of its position, NASA points to another provision of the contract, which explicitly states that "the California Institute of Technology is acting as a contractor and not as an agent of the Government."  ECF No. 10-3, at 6; *see* ECF No. 15, at 4.

The Supreme Court has made clear that "[g]rants of federal funds generally do not create a partnership or joint venture with the recipient, nor do they serve to convert the acts of the recipient from private acts to governmental acts absent extensive, detailed, and virtually day-to-day supervision." *Forsham*, 445 U.S. at 180; *see Buholtz v. U.S. Marshals Serv.*, 233 F. Supp. 3d 113, 116 (D.D.C. 2017) (finding that an agency did not create the records of its "contract facility" where the agency did not supervise or control the facility's day-to-day operations).  However, where an agency exercises "extensive supervision and control" over the collection and analysis of data that was "created" by an outside contractor, the D.C. Circuit has determined that such data is nonetheless subject to FOIA. *Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).

Here, ICAN offers only the contractual provision quoted above to support its position that NASA exercises day-to-day supervision over the JPL's activities. *See* ECF No. 12, at 5; ECF No. 17, at 4-5. But ICAN plainly overstates what the provision actually says. The fact that the JPL has a "primary mission" of supporting NASA and that the two organizations work "in conjunction" to "develop task plans to undertake science, research and technology" does not lead the court to conclude that NASA is heavily involved in the day-to-day management, supervision, or execution of any JPL projects. ECF No. 10-3, at 22; *see generally id*. While the contractual provision on which ICAN relies—and others elsewhere in the contract—may support the notion that NASA is involved in high-level planning of the JPL's priorities and projects, that does not demonstrate that NASA has the level of daily involvement needed for the court to find that it constructively created or obtained the JPL records at issue here. *See Beveridge & Diamond, P.C. v. U.S. Dep't of Health & Hum. Servs.*, 85 F. Supp. 3d 230, 238-39 (D.D.C. 2015) (holding that an agency did not exercise extensive supervision and control over a university where the agency "had no involvement in the [university's] collection of the data . . . [and] no involvement in developing 'the study design for the research'" at issue (citation omitted)); *cf. Forest Cnty. Potawatomi Cmty. v. Zinke*, 278 F. Supp. 3d 181, 196 (D.D.C. 2017) (finding that an agency "created or obtained" the records of a contractor that acted on its behalf as a project manager).

ICAN next cites a provision that states that all records "acquired, generated or maintained by the Contractor in its performance of this Contract shall be the property of the Government and shall be delivered to the Government." ECF No. 10, at 9 (quoting ECF No. 10-3, at 86-87); *see* ECF No. 12, at 6; ECF No. 17, at 2-7. It argues that this clause covers the requested communications because they "were created by Mr. Riley Duren and Mr. Erik Conway during the time of their employment at the NASA JPL, a facility owned by NASA, for the furtherance of

7

NASA's missions; they created the records on an email system owned by the U.S. Government; and they created the records on behalf of Defendant in furtherance of the agency relationship between NASA and Caltech." ECF No. 12, at 6 (citations omitted). And, while another portion of the contract explicitly notes that "[n]ot all records at JPL are Government records," and clarifies that "[p]ersonal notes, logs, memoranda, or other similar documents created by an employee of the [JPL] for the employee's own personal convenience and which are not intended for distribution through the normal course of the Contractor's business," are owned by the JPL, ECF No. 10-3, at 87, ICAN insists that the requested documents do not fall into this category, *see* ECF No. 12, at 6-7; ECF No. 17, at 3-4. In ICAN's view, "[t]he work done by Mr. Duren and Mr. Conway at NASA JPL includes the subject matter of the request and so the records are clearly not records created for the employees' own personal convenience but are instead government records." ECF No. 12, at 6. NASA disputes ICAN's characterization of the contract, ECF No. 15, at 5, but argues that, in any event, the provisions about document ownership do not answer the question whether NASA actually obtained the documents in question, *id.* at 4.

The court agrees with NASA. Supreme Court precedent clearly provides that "FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained." *Forsham*, 445 U.S. at 186. "[D]ocuments an agency ha[s] the right to acquire [do] not become agency records subject to FOIA 'unless and until the right is exercised.'" *Jud. Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011) (quoting *Forsham*, 445 U.S. at 181). In other words, ownership rights alone—even if provided for in a contract—are not enough to convert records into agency records under FOIA if those rights have never been exercised. In her declaration, Ms. Fox explains that NASA "has not created or obtained the requested records," ECF No. 10-2, at 4 ¶ 19, and "has not and would not in its normal course of

8

operations ordinarily obtain" these records from Caltech, *id.* at 4 ¶ 15.  If the court "order[ed] [NASA] to 'exercise [its] right of access[,]' the Court would be effectively compelling the defendant[] to create an agency record' . . . [and] 'FOIA imposes no duty on the agency to create records.'"  *Beveridge & Diamond, P.C.*, 85 F. Supp. 3d at 238 (quoting *Forsham*, 445 U.S. at 185-86).  Accordingly, even if the records in question *are* owned by NASA pursuant to its contract with the JPL, they are not subject to FOIA because NASA has not exercised its right to obtain or access them.

### B.     NASA Did Not Control the Requested Records

Even assuming, *arguendo*, that NASA did create or obtain the requested records, ICAN has failed to demonstrate that NASA controls the records such that they are subject to FOIA.  *See Tax Analysts*, 492 U.S. at 145.  Courts generally consider four factors in determining whether an agency controls particular records: "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files."  *Burka*, 87 F.3d at 515 (quoting *Tax Analysts v. U.S. Dep't of Just.*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd on other grounds*, 492 U.S. 136 (1989)).[5]  Because a major purpose of FOIA is to reveal information

---

[5] In recent years, the D.C. Circuit has noted the "considerable indeterminacy" of the four *Burka* factors.  *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 220 (D.C. Cir. 2013).  The Court has explained that the factors "must be understood as part of the ultimate question of whether a document is an agency record . . . [which] is assessed under a 'totality of the circumstances' test that 'focus[es] on a variety of factors surrounding the creation, possession, control, and use of the document by an agency.'"  *Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849, 855 (D.C. Cir. 2021) (third alteration in original) (quoting *Bureau of Nat'l Affs., Inc. v. U.S. Dep't of Just.*, 742 F.2d 1484, 1490, 1492 (D.C. Cir. 1984)).

related to an agency's conduct in its official duties, the greatest weight is given to the third factor— "the extent to which agency personnel have read or relied upon the document." *Id.*; *see Jud. Watch, Inc.*, 646 F.3d at 927-28 ("[W]e have consistently found that 'use is the decisive factor.'" (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 288 (D.C. Cir. 2006))).

### 1.    Intent to retain or relinquish control

With regard to the first factor, ICAN argues that the "location of the records on a .gov domain owned by NASA" suffices to demonstrate NASA's intention to retain control of the records. ECF No. 12, at 7. In support of its argument, ICAN cites the DOTGOV Online Trust in Government Act of 2020, Pub. L. No. 116-260, §§ 901-907, 134 Stat. 2297, 2297-304, explaining that "the Act prohibits the use of .gov domains for commercial purposes and requires [that] .gov domains . . . only be maintained by authorized individuals," ECF No. 12, at 7-8. ICAN contends that, because the requested emails were sent from emails with addresses on the "jpl.nasa.gov" domain, "under the Act, the[] [requested] records are 'official' agency records." *Id.* NASA responds that while it "may possess title to the [jpl.nasa.gov] domain, it has chosen not to control the emails and chats themselves." ECF No. 15, at 9. In her declaration, Ms. Fox states that "Caltech has sole control of the email system at JPL and operates the *jpl.nasa.gov* email [domain]." ECF No. 10-2, at 4 ¶ 13. She further explains that "[w]hile Caltech employees at JPL use the domain '*jpl.nasa.gov*' to signify that they are assigned by Caltech to work at the JPL facility, and while the U.S. Government owns title to that domain, NASA does not exercise control over the email system used by Caltech employees." *Id.*

While "it seems implausible" to ICAN "that Caltech can maintain this email system independent of NASA's control," ECF No. 12, at 8, "an agency's declarations are entitled to a presumption of good faith," *Am. First Legal Found. v. U.S. Dep't of Homeland Sec.*, 759 F. Supp.

3d 49, 67 (D.D.C. 2024), and the court must credit Ms. Fox's sworn statement that NASA does not control the email system. In any case, the D.C. Circuit has previously noted that "it is not apparent . . . that the domain where an email account is maintained controls the emails therein to the exclusion of the user . . . who maintains the account." *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 149 (D.C. Cir. 2016).[6] Therefore, in the absence of further contrary evidence, this court is not persuaded by ICAN's conclusory argument that the presence of the requested communications on a jpl.nasa.gov domain indicates NASA's intention to retain control of them.

### 2. Ability to use and dispose of the records

Turning to the second factor, ICAN first recycles its previous argument, positing that the communications' presence on a .gov domain proves NASA's "ability to use and dispose of the records as it sees fit." ECF No. 12, at 9; ECF No. 17, at 9-10. As before, the court is unpersuaded that an email domain alone indicates any such thing. *See supra* Section III.B.1. This is especially so given Ms. Fox's declaration, which affirms that "NASA is unable to independently search the *jpl.nasa.gov* email [domain] and is unable to review the records located through the search coordinated by the JPL FOIA Liaison," and that "NASA has not and would not in its normal course of operations ordinarily obtain from Caltech the records Plaintiff seeks which are controlled by Caltech on the *jpl.nasa.gov* email [domain]." ECF No. 10-2, at 4 ¶¶ 14-15; *see id.* ¶ 17 ("NASA personnel do not have the ability to use and dispose of the requested records as they see fit.").

---

[6] As the Court further explained, "[w]hen one receives an email from John Doe at, for example, gmail.com, and replies thereto, the replier would be likely to think that message is going to John Doe, not gmail.com." *Competitive Enter. Inst.*, 827 F.3d at 149-50.

ICAN next points to 5 U.S.C. § 552(f)(2)(B), arguing that, under the FOIA statute, "maintenance of the records by Caltech does not extinguish [NASA]'s ability to use and dispose of the records as it sees fit."  ECF No. 12, at 9; *see* ECF No. 17, at 10.  Section 552(f)(2)(B) provides that records "that [are] maintained for an agency by an entity under Government contract, for the purposes of records management" remain subject to FOIA.  NASA contests the applicability of the provision, arguing that it applies only to "entities that are specifically under contract 'for the purposes of records management,' which is not the case here." ECF No. 15, at 10 (citation omitted) (quoting § 552(f)(2)(B)).

The court agrees with NASA.  Section 552(f)(2)(B) "primarily addresses the availability of physical documents committed to the custody of a third-party for storage[] and does not necessarily impose an affirmative obligation to search for and produce documents in the possession of third[-]party contractors."  *Ryan v. Fed. Bureau of Investigation*, 113 F. Supp. 3d 356, 363 (D.D.C. 2015); *see Am. Small Bus. League v. U.S. Small Bus. Admin.*, 623 F.3d 1052, 1053 (9th Cir. 2010) (per curiam) (holding that government cell phone records in Verizon's possession did not fall under Section 552(f)(2)(B) where it was "undisputed that Verizon did not maintain the phone records pursuant to a records-management contract" with the agency).  Because the JPL is contracted to support "the special, long-term research and development needs of NASA missions when those needs cannot be met as effectively by existing in-house Federal or contractor resources," ECF No. 10-2, at 2 ¶ 4, and not for the purposes of record management, Section 552(f)(2)(B) does not apply.

### 3. Extent to which agency personnel read or relied on the records

Regarding the third factor, ICAN argues that "the likelihood NASA personnel relied upon [the requested communications] is high" because "NASA JPL employees work in conjunction with

12

NASA in furtherance of NASA's missions" and the nasa.gov domain "reasonably indicates to NASA personnel that emails sent by individuals from the domain have authority to act on behalf of NASA and the federal government." ECF No. 12, at 10-11; *see* ECF No. 17, at 8-10. The trouble with this argument is that it is speculative, and ICAN's speculation cannot overcome Ms. Fox's declaration, which states that NASA is "unable to review the records located through the search coordinated by the JPL FOIA Liaison"; that it "has not . . . obtain[ed] from Caltech the records [ICAN] seeks"; and that "NASA personnel have not read or relied upon the requested records." ECF No. 10-2, at 4 ¶¶ 14-16. Given the lack of contrary evidence produced by ICAN, and crediting Ms. Fox's declaration as it must, the court concludes that NASA has not read or relied upon the requested records.[7]

### 4. Degree of integration into the agency's record system or files

Finally, ICAN asserts that the requested communications are integrated into NASA's record system such that NASA controls them. ECF No. 12, at 11-13; ECF No. 17, at 8-10. ICAN first argues that the FOIA process—which suggests a relationship between the JPL and NASA— as well as the existence of the NASA Office of JPL Management and Oversight at Caltech, together

---

[7] ICAN also argues, in a rather circular manner, that "if NASA personnel have not read the requested records, NASA cannot determine whether Mr. Duren or Mr. Conway sent any of the requested emails to NASA personnel, in which case NASA personnel would have read the records and likely relied upon them." ECF No. 12, at 10. ICAN misunderstands the third factor, which focuses on the agency's "use" of the materials at issue—here, "there is no question that disclosure of the requested records would reveal nothing about decisionmaking" at NASA. *Jud. Watch, Inc.*, 646 F.3d at 928. The court also notes that ICAN *could* request communications with Mr. Duren and Mr. Conway that are located on the systems of NASA employees; however, the parties agree that ICAN "is not requesting a search of the system of every employee at NASA to see if they have an email or chat with either of the two Caltech employees listed in the request." ECF No. 15-1 ¶ 21. In the absence of any such request, and with no evidence of agency bad faith, the court must credit Ms. Fox's statement that "NASA personnel have not read or relied upon the requested records." ECF No. 10-2, at 4 ¶ 16.

indicate that NASA "clearly knows . . . [that] JPL maintains agency records." ECF No. 12, at 11; *see* ECF No. 17, at 8-9. This argument is also a non-starter. The fact that NASA implicitly acknowledges that *some* JPL records may be subject to FOIA, and that it provides for the oversight of any such records, does not suggest that *all* JPL records fall into that category. And, in any event, the existence of a FOIA process and an oversight office does not speak specifically to the factor at issue here—whether the requested communications are integrated into NASA's record system.

ICAN makes a second argument, contending that the "individuals in the request represented themselves as being employed at NASA JPL, thereby subjecting their emails to NASA's control." ECF No. 12, at 12; *see id.* (explaining that Mr. Duren and Mr. Conway represent on their LinkedIn profiles that they work at the NASA JPL and that Mr. Duren has his jpl.nasa.gov email address on his website). The court fails to see the connection between the JPL employees' representations about their employment and NASA's control of the records in question. Whether Mr. Duren and Mr. Conway represent that they were "NASA JPL" employees on their LinkedIn accounts or websites has absolutely no bearing on whether the requested JPL files are integrated into NASA's system. *See id.* The only relevant evidence before the court is Ms. Fox's declaration, and it establishes that "Caltech has sole control of the email system at JPL," ECF No. 10-2, at 4 ¶ 13, and that "there is no indication that the requested records . . . have been integrated into NASA's record systems," *id.* ¶ 18. Accordingly, the court concludes that the requested records have not been integrated into NASA's record system.

\*   \*   \*

Because ICAN has failed to raise a genuine dispute of material fact about whether NASA created or obtained the records it seeks—and because, even if it had, it could not show that NASA controlled the records—the court determines that the requested communications are not "agency

14

records" within the meaning of FOIA and, accordingly, they are not subject to disclosure under the statute.

## IV. CONCLUSION

For the foregoing reasons, the court will grant NASA's motion for summary judgment, ECF No. 10, and deny ICAN's cross-motion for summary judgment, ECF No. 13. A contemporaneous order will issue.

*[signature]*

_____
LOREN L. ALIKHAN
United States District Judge

Date:   September 29, 2025